133 Nev., Advance Opinion 82

# IN THE SUPREME COURT OF THE STATE OF NEVADA

CITY OF LAS VEGAS,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE ROB
BARE, DISTRICT JUDGE,
Respondents,
  and
STEVEN KAMIDE,
Real Party in Interest.

No. 71637



FILED

NOV 16 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order vacating misdemeanor convictions and remanding for a new trial.

*Petition granted.*

Bradford R. Jerbic, City Attorney, and Kelly K. Giordani, Deputy City Attorney, Las Vegas,
for Petitioner.

Weiner Law Group, LLC, and Jason G. Weiner and Gregory G. Cortese, Las Vegas,
for Real Party in Interest.

BEFORE HARDESTY, PARRAGUIRRE and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

In this opinion, we consider an appellate court's review of unpreserved trial error. As we have emphasized, it is incumbent upon the

17-394886

parties to make a contemporaneous objection to trial error. This not only ensures that the trial court has an opportunity to rule upon the objection and take remedial action if appropriate, but it also preserves the alleged error for appellate review. Conversely, unpreserved error need not be considered on appeal. While we have allowed discretionary review of unpreserved error, we have limited such review to errors that are unmistakably apparent from a casual inspection of the record. Here, the district court, acting in its appellate capacity, considered an unpreserved claim but ignored the clear record and speculated as to facts that could demonstrate error. As the district court's review was not in accord with our established plain error rule, we grant the petition and issue the requested writ.

## FACTS AND PROCEDURAL HISTORY

In February 2015, Brock Rice, Trey Rosser, and Jeremy Hughes were leaving a restaurant and bar when they saw Kimberly Kamide lying on the ground, clearly intoxicated. The three men offered to give Kimberly a ride to her nearby home. When they arrived at Kimberly's residence, her husband, Steven Kamide, ran out of the house toward the vehicle. He pushed and shoved Kimberly to the ground and got into a physical altercation with Rice, Rosser, and Hughes.

The City of Las Vegas (the City) charged Kamide with one count of domestic battery and two counts of simple battery in the Las Vegas Municipal Court. During the bench trial, the City invoked the witness exclusion rule and Rice, Ross, and Hughes sat together in the hallway. While cross-examining Hughes after Rice and Rosser had testified, Kamide's counsel indicated that she had seen the three men talking together during a recess. Hughes answered that they had been reading Twitter together and had not been "talking about anything." Kamide's

counsel did not ask any other questions regarding the witnesses' interaction or pursue the matter further.

After the municipal court found Kamide guilty of all counts charged, he appealed to the district court, alleging for the first time a violation of NRS 50.155(1), the witness exclusion rule. The district court found that the rule had been violated. The district court concluded that prejudice had to be presumed because the record did not clearly show the absence of prejudice and reversed Kamide's convictions. The City filed this original writ petition challenging the district court's decision.

## DISCUSSION

The decision to consider a petition for a writ of mandamus lies within this court's complete discretion. *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008). The writ will generally not issue if the petitioner has a plain, speedy, and adequate remedy at law, *see* NRS 34.170, but there is no such remedy for the City in this matter as "district courts are granted exclusive final appellate jurisdiction in cases arising in Justices Courts and such other inferior tribunals."[1] *Sandstrom v. Second Judicial Dist. Court*, 121 Nev. 657, 659, 119 P.3d 1250, 1252 (2005) (internal quotation marks omitted). "[A]s a general rule, we have declined to entertain [writ petitions] that request review of a decision of the district court acting in its appellate capacity," noting that we are mindful of "undermin[ing] the finality of the district court's appellate jurisdiction." *State v. Eighth Judicial Dist. Court (Hedland)*, 116 Nev. 127, 134, 994 P.2d 692, 696 (2000). But we have entertained such petitions in circumstances

---

[1]We are unpersuaded by Kamide's argument that the City's ability to retry him serves as a speedy or adequate remedy when the City seeks to challenge the district court's appellate decision.

where the district court "has exercised its discretion in an arbitrary or capricious manner." *Id.* A decision is arbitrary or capricious when it is "founded on prejudice or preference rather than on reason, or" is "contrary to the evidence or established rules of law." *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 931-32, 267 P.3d 777, 780 (2011) (citation and internal quotation marks omitted).

We elect to exercise our discretion and consider whether the district court's appellate decision in this case was contrary to the evidence and established rules of law.[2]

"It is well established that failure to object to asserted errors at trial will bar review of an issue on appeal." *Brown v. State*, 114 Nev. 1118, 1125, 967 P.2d 1126, 1131 (1998) (internal quotation marks omitted). Nonetheless, an appellate "court has the discretion to address an error if it was plain and affected the defendant's substantial rights." *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (internal quotation marks omitted); *see also* NRS 178.602. The plain error rule affords an appellate court discretion to consider an issue raised for the first time on appeal only if it makes three determinations: (1) there was error, (2) the error was plain or clear from the record, and (3) "the error affected the defendant's substantial rights." *Green*, 119 Nev. at 545, 80 P.3d at 95. In exercising that discretion, the district court ignored the evidence and settled law relevant to the second inquiry under the plain error rule—whether the error was "plain."

Kamide argued for the first time on appeal that the witnesses violated the witness exclusion rule set forth in NRS 50.155(1) and that

---

[2]We have considered Kamide's argument related to the doctrine of laches and conclude that laches does not preclude consideration of the City's petition in this instance. *See Hedland*, 116 Nev. at 135, 994 P.2d at 697.

prejudice should be presumed based on *Givens v. State*, 99 Nev. 50, 657 P.2d 97 (1983), *disapproved of on other grounds by Talancon v. State*, 102 Nev. 294, 301 & n.3, 721 P.2d 764, 768-69 & n.3 (1986). Pursuant to the witness exclusion rule, "at the request of a party the judge shall order witnesses excluded so that they cannot hear the testimony of other witnesses." NRS 50.155(1). "The purpose of sequestration of witnesses is to prevent particular witnesses from shaping their testimony in light of other witnesses' testimony, and to detect falsehood by exposing inconsistencies." *Givens*, 99 Nev. at 55, 657 P.2d at 100. In *Givens*, we examined a situation in which the district court denied defense counsel's request to invoke the witness exclusion rule and held that, based on a conceded violation of the rule, we would "presume prejudice from a violation of NRS 50.155 unless the record shows that prejudice did not occur." *Id.* at 52-55, 657 P.2d at 98-100.

Consistent with the statute, the trial court excluded witnesses from the courtroom upon the City's request. Kamide has never suggested that any of the witnesses were in the courtroom when other witnesses testified, and the record does not reflect any such violation of the witness exclusion rule. Instead, Kamide focused on the admitted interaction between several witnesses outside of the courtroom. That interaction implicates an admonition that the trial court gave the witnesses when it excluded them from the courtroom—that they were not to discuss their testimony with anyone. Whether a violation of the trial court's admonishment about out-of-court communications also violates NRS 50.155(1) is an open question in Nevada. This court has not addressed whether NRS 50.155(1) imposes a duty to limit out-of-court communications between witnesses about their testimony when the witness exclusion rule

Supreme Court
of
Nevada

(O) 1947A

has been invoked; the statute expressly refers only to excluding witnesses from the courtroom. Cases decided by other courts interpreting similar witness exclusion rules are in conflict on this issue. *See generally* 29 Charles Alan Wright & Victor Gold, *Federal Practice and Procedure* § 6243, at 63-64 (2d ed. 2016). We need not resolve the matter in this case because even if the statute does not require an admonishment regarding out-of-court communications between witnesses about their testimony, the trial court likely had discretion to admonish the witnesses to refrain from such communications. *See id.*; *see also Perry v. Leeke*, 488 U.S. 272, 281 (1989) (recognizing that "[i]t is a common practice for a judge to instruct a witness not to discuss his or her testimony with third parties until the trial is completed" and "[s]uch nondiscussion orders are a corollary of the broader rule that witnesses may be sequestered"). Because the trial court admonished the witnesses in this case, it would be an error for the witnesses to violate this admonishment.

To show that the witnesses violated the trial court's admonishment, Kamide directed the district court to defense counsel's cross-examination of Hughes. During that examination, defense counsel indicated that she saw Hughes and two other witnesses talking outside the courtroom, and Hughes explained that they were reading Twitter but not talking about anything:

> [Counsel for Kamide]: I noticed when I walked to the bathroom during the break—
>
> A: Um-hmm (in the affirmative).
>
> Q: —that you guys were all taking [sic], the three of you.
>
> A: Um-hmm (in the affirmative).
>
> Q: You know you weren't supposed to be talking, the three of you, the three witness [sic]?

A: We—we were just talking about just—we were actually reading Twitter.

Q: Okay.

A: We weren't talking about anything.

Q: Okay. But you know you're not supposed to be talking?

A: Um-hmm (in the affirmative).

Q: Okay.

Based on this exchange, the district court found a "plain" error.

The district court's determination ignores the evidence and controlling law. First, the district court necessarily ignored Hughes' testimony when it indicated that the record was not clear whether the witnesses discussed their testimony with each other. Hughes testified that the witnesses "weren't talking about anything." Based on Hughes' testimony, the record is clear that the witnesses did not discuss their testimony with each other. Even if the district court accurately characterized the record as being unclear, the district court still could not find plain error under established law. Under established law, an error is "plain" when it "is so unmistakable that it reveals itself by a casual inspection of the record." *Patterson v. State*, 111 Nev. 1525, 1530, 907 P.2d 984, 987 (1995) (internal quotation marks omitted). According to the district court, "the conversation could be nothing related to the court proceeding, it could be that it was related, this [c]ourt does not know." If the record is such that the district court "does not know" what happened, then the error cannot be "so unmistakable that it reveals itself by a casual

inspection of the record," *id.*, as required to find that an error is "plain" under established law.[3]

At best, and ignoring Hughes' testimony that the witnesses "weren't talking about anything" (as the district court apparently did), a casual inspection of the record reveals that the witnesses talked to each other. The mere fact that the witnesses talked to each other is not sufficient to establish an unmistakable violation of the trial court's admonition that the witnesses not talk to each other *about their testimony*. *Cf. State v. Lucas*, 896 So. 2d 331, 339 (La. Ct. App. 2005) (remarking that "[t]he mere fact that a witness speaks to other witnesses does not establish a violation of the order of sequestration" issued pursuant to a state statute analogous to NRS 50.155(1)). The only way to find an error on this record is to speculate, something that the established plain error rule does not allow. Kamide had the opportunity to pursue this matter in the trial court and create a clear record of the alleged error. His failure to do so precluded the

---

[3]Additionally, the district court stated multiple times that it felt compelled to presume a violation of NRS 50.155(1) based on *Givens*. Even assuming that caselaw is relevant to Kamide's claim that the witnesses were talking outside the courtroom, it does not allow a court to presume a violation based on a silent record. In *Givens*, the State conceded a violation of the statutory witness exclusion rule, and we held that *prejudice* would be presumed unless the record showed otherwise; we made no comment regarding the presumption of a *violation* of NRS 50.155(1). 99 Nev. at 54-55, 657 P.2d at 100.

district court from affording him relief on appeal under the plain error rule.[4] *See Maestas v. State*, 128 Nev. 124, 146, 275 P.3d 74, 89 (2012) (explaining that because defendant did not raise the issue in trial court, the record was not sufficiently developed to allow appellate court to determine that any error was "plain" and therefore the issue was not amenable to review under the plain error rule).

Because the district court arbitrarily and capriciously exercised its discretion under the plain error rule to consider an issue that was not preserved for appeal, we grant the petition. The clerk of this court shall issue a writ of mandamus directing the district court to vacate its order reversing Kamide's convictions and to enter an appropriate disposition of Kamide's appeal consistent with this opinion.

_____, J.
Stiglich

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre

---

[4]To the extent the district court imposed a duty on the trial court to conduct an evidentiary hearing *sua sponte* to determine whether the witnesses communicated with each other about their testimony, we disagree. *See generally Estelle v. Williams*, 425 U.S. 501, 512 (1976) (explaining the court's role in the adversarial process).